**Lillian Jo McEWEN, aka Lillian Jo Ramus, aka Lillian Jo Paeper, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 21763.

United States Court of Appeals Ninth Circuit.

Feb. 12, 1968.

———◆———

Allen R. Derr (argued), Boise, Idaho, for appellant.

Sylvan A. Jeppesen, U. S. Atty., Clarence D. Suiter, Asst. U. S. Atty., Boise, Idaho, for appellee.

Before DUNIWAY, ELY, Circuit Judges, and BOLDT, District Judge*.

BOLDT, District Judge.

Appellant was indicted, tried by a jury and convicted of forcibly assaulting a federal officer engaged in the performance of his official duties in violation of 18 U.S.C. § 111 and 18 U.S.C. § 1114.[1] The district court had jurisdiction of an offense against the laws of the United States under 18 U.S.C. § 3231; our jurisdiction on appeal is based on 28 U.S.C. § 1291. We affirm.

On July 9, 1966, some months after her escape from custody in Spokane, Washington where she was being held in connection with forgery charges, appellant was captured at a motel in Post Falls, Idaho by federal, state and local authorities acting on information as to her whereabouts supplied by an informant.

While motel guests were being evacuated from the premises near appellant's room, her brother was seen to leave the area. Appellant's brother was stopped by the F.B.I. some distance from the motel; he confirmed appellant's room number at the motel and agreed to return to the motel. The area in front of the single door to appellant's room was blocked with automobiles.

The presence of the officers was announced and directed to appellant over an electrically operated megaphone, she was told the area was surrounded and asked to surrender. Appellant responded by asking the officers to "wait a minute". Next, the sound of a gunshot was heard coming from the interior of appellant's room. Appellant then opened the door of her room and confronted the officers, firing a gold-plated, sawed-off .30 caliber carbine. One F.B.I. agent was struck in the leg by a ricocheting bullet. Appellant was wounded in the course of the ensuing gun battle, taken into custody and removed from the scene in an ambulance.

During the trial, appellant's brother and the officers participating in her arrest testified to the effect that the megaphone was first used to identify the

---

* Honorable George H. Boldt, United States District Judge, Western District of Washington, sitting by designation.

1. The one count indictment charged appellant with assault upon a federal agent of the Federal Bureau of Investigation in violation of 18 U.S.C. § 111, which provides:

"Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both."

Section 1114 includes "any officer or employee of the Federal Bureau of Investigation of the Department of Justice."

speaker as an F.B.I. agent with a warrant for appellant's arrest. Appellant testified: "I had no idea [who was out there]. I had a sneaking hunch that it was policemen. I don't know what individuals—I had no idea what branch."

The modified carbine used by appellant in resisting arrest was placed on the rear seat of a federal agent's car while the premises were searched; thirty minutes later the carbine was transported to Spokane and placed in an F.B.I. vault. Two days after appellant's capture, bullet fragments were taken from two of the automobiles which had been parked in front of the motel during the altercation. Laboratory tests later identified the fragments as having come from appellant's carbine to the exclusion of all other weapons.

On this appeal, appellant contends the indictment was fatally defective in that it did not charge appellant with knowledge that federal officers were among those she assaulted. Appel-

lant also predicates error on the trial court's refusal to instruct the jury a defendant's knowledge of the federal capacity of an officer assaulted is a necessary element for violation of 18 U.S.C. § 111. In support of these contentions, appellant relies on language of the United States Supreme Court in Pettibone v. United States, 148 U.S. 197, 13 S.Ct. 542, 37 L. Ed. 419 (1893), as interpreted and applied in United States v. Bell, 219 F.Supp. 260 (E.D. New York, 1963).

In *Pettibone,* the Court struck down an indictment charging defendants with disobeying a Court injunction and thereby obstructing the administration of justice because the indictment did not allege defendants had knowledge or notice of the issuance of the injunction or that defendants acted with a purpose to violate the injunction. In our opinion the language of the Court in *Pettibone,* when considered in context, does not support the interpretation of 18 U.S.C. § 111 contended for by appellant.[2]

2. In *Pettibone* defendants were convicted of conspiring to obstruct the administration of justice, in that they disobeyed an injunction restraining them from interfering with plaintiff's mine officers and employees. The Supreme Court stated "the indictment nowhere made the direct charge that the purpose of the conspiracy was to violate the injunction, or to interfere with [court] proceedings * * *" 148 U.S. p. 203, 13 S.Ct. p. 545. In reversing the convictions, the Court continued: "That this omission was advisedly made is apparent from the statement in the bill of exceptions that there was no evidence given on the trial showing, or tending to show, that the writ of injunction mentioned and set forth in the indictment was served upon the defendants, or either of them, or that they, or either of them, had any notice or knowledge of the issue thereof." 148 U.S. p. 204, 13 S.Ct. p. 545. The conclusion of the Court and the language relied on by appellant in the instant case, then followed: "It seems clear that an indictment against a person * * * endeavoring to * * * impede a witness or officer in a court of the United States in the discharge of his duty, must charge knowledge or notice, on the part of the accused that the witness or officer was

such; and the reason is no less strong for holding that a person is not sufficiently charged with obstructing or impeding the due administration of justice in a court unless it appears that he knew or had notice that justice was being administered in such court.
 *   *   *   *   *
In matters of contempt, persons are not held liable for the breach of a restraining order of injunction unless they know or have notice, or are chargeable with knowledge or notice, that the writ has been issued, or the order entered, or at least that application is to be made; but without service of process, of knowledge or notice or information of the pendency of proceedings, a violation cannot be made out.
 *   *   *   *   *
The obstruction of the due administration of justice in any court of the United States * * * is indeed made criminal, but such obstruction can only arise when justice is being administered. Unless that fact exists the statutory offense cannot be committed, and while, with knowledge or notice of that fact, the intent to offend accompanies obstructive action, without such knowledge or notice the evil intent is lacking. It is enough if the thing is done which the statute forbids, provided the situation

The legal interpretation given 18 U.S.C. § 111 by the district court in *Bell,* and relied on by appellant, has twice been repudiated by later decisions of the Court of Appeals for that district. United States v. Montanaro, 362 F.2d 527 (2nd Cir., 1966) ; United States v. Lombardozzi, 335 F.2d 414, 10 A.L.R.3d 826 (2d Cir., 1964). We agree with the reasoning and the holding of these decisions.

The rationale for not requiring knowledge or *scienter* as an element of the offense of assaulting a federal officer in the course of performing his duties may be succinctly stated: (1) "The courts should not by judicial legislation change the statute by adding, in effect, the words 'with knowledge that such person is a federal officer' [to its provisions]", *Lombardozzi,* supra, p. 416; and (2) the common law rule that *scienter* was a necessary element in the indictment and proof of every crime has been modified with respect to statutes, the purpose of which would be obstructed by such a requirement. United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922) ; United States v. Wallace, 368 F.2d 537 (4th Cir., 1966). No violation of due process is involved. *Balint,* supra, 258 U.S. p. 251–252, 42 S.Ct. 304, citing Shevlin-Carpenter Co. v. State of Minnesota, 218 U.S. 57, 30 S.Ct. 663, 54 L.Ed. 930 (1910). The indictment is sufficient although not charging appellant with knowledge or intent at the time she committed the offense, it being phrased in the language of the statute itself. United States v. Behrman, 258 U.S. 280, 42 S. Ct. 303, 66 L.Ed. 619 (1922).

■ A proper foundation was laid for admitting the carbine and bullet fragments into evidence and the record discloses ample evidence to sustain the verdict.

Affirmed.

invokes the protection of the law, and the accused is chargeable with knowledge or notice of the situation ; but not

otherwise." 148 U.S. pp. 206–207, 13 S.Ct. pp. 546–547.