**Moses COTTON, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 20306.**

United States Court of Appeals,
Eighth Circuit.

July 21, 1971.

Robert J. Brown, Little Rock, Ark., for appellant.

Richard M. Pence, Jr., Asst. U. S. Atty., W. H. Dillahunty, U. S. Atty., Little Rock, Ark., for appellee.

Before VOGEL, MEHAFFY and LAY, Circuit Judges.

MEHAFFY, Circuit Judge.

This is an appeal in forma pauperis by Moses Cotton, fifteen years of age at the time, from a judgment of the district court finding that defendant was a juvenile delinquent and committing him to the custody of the Attorney General for and during his minority. The issues presented by this appeal are (1) the admissibility of defendant's statement into evidence and (2) whether 18 U.S.C. § 5033 is invalid as unconstitutional by reason of depriving defendant of a jury trial. We affirm.

On March 11, 1970 the defendant, Moses Cotton, age fifteen, was arraigned before Judge Henley, Chief Judge, United States District Court for the Eastern District of Arkansas. Pursuant to 18 U.S.C. § 5033, consent to be proceeded against as a juvenile delinquent was signed by defendant and filed in open court. An information was filed charging defendant, as a juvenile delinquent, with violation of 18 U.S.C. § 1708. The information alleged that on or about February 1, 1969 defendant stole from a United States Post Office at Dumas, Arkansas a letter containing United States Treasury Check No. 86,-540,872, payable to Will Pittman in the sum of $69.63. Defendant, who was represented by capable appointed counsel, entered a plea of not guilty.

On the afternoon of March 11, 1970 a hearing was held on defendant's motion for production of documents and suppression of evidence. Defendant was granted discovery of all statements and documents proposed to be used as evidence. After hearing testimony, the court denied the motion to suppress a statement taken from defendant by Harold Duke, a Secret Service Agent. On cross-examination, defendant identified his statement and signature and acknowledged that Agent Duke did not threaten him in order to obtain the statement. At the close of the hearing, the court was informed that defendant would raise the constitutional issue of whether 18 U.S.C. § 5033 denied defendant his right to trial by jury. Section

5033 of the Federal Juvenile Delinquency Act, 18 U.S.C. § 5033, provides that the juvenile delinquency proceedings "shall be without a jury" and that the consent required to be executed by the juvenile "shall be deemed a waiver of trial by jury." The consent executed by defendant provided that defendant "consents that he be tried to the court without a jury."

On March 18, 1970 defendant filed a written motion to declare 18 U.S.C. § 5033 unconstitutional and for a trial by jury. The following day the court denied the motion for a jury trial.

Defendant was tried to the court without a jury on April 2, 1970. During the trial the motion to suppress was renewed and again overruled. Defendant was found to be a juvenile delinquent and committed to the custody of the Attorney General as above stated.

There is no dispute as to the facts which support the adjudication of juvenile delinquency. On August 20, 1969 Agent Harold Duke went to Dumas, Arkansas to investigate the theft of five United States Treasury checks from individual boxes in the United States Post Office at Dumas. One of the checks being investigated was United States Treasury Check No. 86,540,872 payable to Will Pittman in the sum of $69.63. A postal inspector had given Agent Duke the names of two suspects, Cleveland Robinson and the defendant, Moses Cotton. The local police officers were unaware that Duke was coming to Dumas. When he arrived in Dumas, Agent Duke contacted the Dumas Chief of Police but was unable to obtain any assistance in locating defendant. Agent Duke then went to the Cotton residence. His mother did not know where Moses was but assumed that he was in town. Defendant's older brother, Lee Cotton, age eighteen, who was also at the home, offered to help Agent Duke find Moses and the other suspect, Cleveland Robinson. Agent Duke told Lee that he wanted to talk to Moses and two of his older brothers as he had heard that they might be involved with the checks. Lee Cotton first located Cleveland Robinson who, after being advised of his rights, was interviewed by Agent Duke in an unlocked storage room at the Dumas City Hall. Near the conclusion of the interview, Lee Cotton brought his brother, the defendant, Moses Cotton, to City Hall. Prior to the interview with defendant, a statement was read to defendant advising him of all of his constitutional rights. Defendant read the form and signed it. No city police officers nor any other persons were present. The interview lasted about two hours. Defendant was photographed and fingerprinted and a personal history and handwriting exemplars were taken. In the course of the interview defendant admitted that he stole the Will Pittman check from an unlocked box in the Post Office, that he gave this check to Cleveland Robinson who cashed it at a Sterling store while he waited across the street, and that defendant received $15.00 out of the proceeds. This oral admission was put in writing by Agent Duke. Defendant signed the statement and at the bottom wrote that he had read the statement and that it was true, misspelling the word "true."

*1. Whether defendant's statement was admissible in evidence.*

Defendant argues that he was "mentally crushed" by the acts of the state law enforcement officers which resulted in a statement being given to the federal agent. The acts he refers to are several arrests by the state officers and the statement by one of the state officers that someone was coming to see him and that he had "better tell." The testimony at the hearing is to the effect that Agent Duke took the statement on Wednesday, August 20, 1969. Defendant testified that he was not arrested shortly before Agent Duke talked to him, but that he was arrested on Saturday after Agent Duke talked to him, and that the statement of the local police officer was made on that Saturday. The record also shows that the arrests were

for stealing state checks, not federal checks, and for fighting, and were in no way related to the investigation by Agent Duke. There was no concerted action between Agent Duke and the local officers and the district court so found. In short, there is no evidence to support defendant's contention that the local investigations had an impact on the federal investigation and there is no evidence of abuse or coercion at all by the Secret Service Agent. The facts relied on in Gallegos v. Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962); Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); and Haley v. Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948), to set aside a conviction are absent here. In the present case the record shows no physical or mental force was used on defendant. There was no long detention period. In fact, he was released after the two-hour interview by Duke. At the hearing on March 11, 1970 defendant acknowledged that a "Warning and Consent to Speak" form was read to him, and that he signed it.

It is argued that defendant is not a person who could effectively waive his constitutional rights. The Fifth Circuit, dealing with a case closely related, rejected such a contention. West v. United States, 399 F.2d 467 (5th Cir. 1968), cert. denied, 393 U.S. 1102, 89 S.Ct. 903, 21 L.Ed.2d 795 (1969). See also United States ex rel. Richardson v. Vitek, 395 F.2d 478 (7th Cir. 1968). Along this same line, defendant points out that he could not even spell the word "true" after the district judge spelled it for him. Apparently this is to show his lack of understanding and the unreliability of the statement, but the record shows that defendant misspelled "true" for the court when requested to write that word exactly in the manner that it was misspelled on the statement taken by Agent Duke, leaving little doubt that the defendant wrote on Duke's statement that he had read the statement and that it was true. The fact that he misspelled the word does not show lack of understanding. Defendant attended school for four years, entering the first grade at the age of ten.

■ The record shows that the statement was freely and voluntarily given after a warning of his constitutional rights, that no error was committed in receiving it in evidence, and that Agent Duke did not threaten him in any way nor mistreat him.

### 2. The constitutionality of the Act.

Finally, defendant contends that § 5033 violates the Sixth Amendment right to trial by jury and that the only case which squarely considers the question, Nieves v. United States, 280 F.Supp. 994 (S.D.N.Y.1968), held the statute unconstitutional. He argues that In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1966), is analogous in that it considers juvenile rights generally and that that decision supports Nieves and would require a similar holding here. We find this argument unacceptable in light of McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), which held "that trial by jury in the juvenile court's adjudicative stage is not a constitutional requirement."

■ The federal statute, § 5033, does not impair any right to a jury trial. It affords a juvenile an opportunity to choose his forum. The juvenile who does intelligently consent does so with full realization that he is foregoing a trial by jury. In the instant case, defendant at the time represented by competent counsel in open court consented to being proceeded against as a juvenile delinquent. He signed the statement and his attorney witnessed it.

At the time of the last hearing defendant was in custody of the state officers and had to be brought to the hearing under a writ of habeas corpus *ad prosequendum*. Defendant's birthday was August 30, 1970 when he was sixteen. The record is silent about when he was taken into custody by the federal officers, but in any event the maximum period of commitment was for five years

and defendant was not faced with any impermissible choice.[1]

Defendant in this case was treated with the utmost consideration from the first time Agent Duke talked to him and throughout. He was given the *Miranda* warnings which he certainly understood as he was no stranger to criminal prosecution despite his youth. He intelligently waived his right to a jury in the presence of his counsel who witnessed his written waiver. There is no way that a juvenile, or an adult for that matter, could be treated with any more consideration.

The only way we could reverse this case would be to hold the Federal Juvenile Delinquency Act unconstitutional, and this we cannot do.

The judgment is affirmed.

---

1. The court in sentencing said:
"Now, this does not mean that the Attorney General will keep you in custody until you are 21. In all probability, if you behave yourself and try to learn and get along well, he will not keep you anything like that long. But he could keep you that long and, of course, the balance of the time you will be released on probation, and you must behave. If you don't, then the Court or the Attorney General, or somebody, will have to have you picked up and put you back in custody for a while. The Court would urge you to make the best of the opportunity you have. You will be going to a place where you will have an opportunity to learn something. The Court hopes that you will try to learn some trade that will enable you to earn a living, and that while you are in there they will teach you not to cheat and steal. You just can't get along trying to live that way."