**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Rigoberto SALCIDO–MEDINA, Defendant-Appellant.**

**No. 72-3203.**

United States Court of Appeals, Ninth Circuit.

Aug. 6, 1973.

Certiorari Denied Dec. 3, 1973.

See 94 S.Ct. 582.

Robert W. Ripley, Jr. (argued), Federal Defender, San Diego, Cal., for defendant-appellant.

Donald F. Shanahan, Asst. U. S. Atty. (argued), Harry D. Steward, U. S. Atty., Stephen G. Nelson, Michael E. Quinton, Asst. U. S. Attys., San Diego, Cal., for plaintiff-appellee.

Before DUNIWAY and TRASK, Circuit Judges, and LUCAS,* District Judge.

TRASK, Circuit Judge:

This is an appeal from a judgment of conviction entered against Rigoberto Salcido-Medina following a jury trial for violation of 18 U.S.C. § 371 and 8 U.S.C. § 1324, conspiracy to bring in and harbor aliens. At the time of conviction, appellant was seventeen years of age and was found suitable for handling under the Federal Youth Corrections Act. Imposition of sentence was suspended and pursuant to 18 U.S.C. § 5010(a) appellant was placed on probation for three years.

On August 26, 1972, at approximately 9:30 p.m., appellant drove a 1954 Cadillac into the United States from Mexico at the Tecate port of entry. He parked his car near the entry and raised the hood of his car. A few minutes later, Arcenio Ontiverso drove a 1966 Buick through the Tecate entry, drove around in the parking lot where appellant had stopped and appeared to signal appellant to follow. Appellant did follow and both vehicles proceeded toward an area known as Little Tecate.

Agent Button, who had observed both cars enter the United States, radioed agent Kitchens to watch for the two cars. After approximately 15 to 20 minutes, Kitchens saw both cars come onto Highway 94 from Tecate Road, and shortly thereafter he stopped the Cadillac. At that time, Ontiverso was driving this car and appellant was a passenger. In response to a call from Kitchens, agent Button proceeded west on Highway 94 where he caught the 1966 Buick, driven now by Raul Renteria. This vehicle held five other males, all Mexican nationals illegally in the United States.

Testimony of some of the Mexican nationals established that appellant was seen in Tijuana with co-defendant Ontiverso, that one Mexican, Jesus Abran, had made a phone call to a girl friend about a $300 payment for transportation, and that the appellant had accompanied Abran while the phone call was made, and had spoken to the girl for assurances that payment would be available. Appellant allegedly accompanied Abran at the direction of Ontiverso.

On September 11, 1972, appellant advised the trial court that he was seventeen, that he wished to proceed as a juvenile delinquent, under the provisions of the Federal Juvenile Delinquency Act, 18 U.S.C. § 5033 (F.J.D.A.),[1] but that he did not wish to waive his right to a

---

* Honorable Malcolm M. Lucas, United States District Judge for the Central District of California, sitting by designation.

1. The Federal Juvenile Delinquency Act, June 25, 1948, 62 Stat. 857, 18 U.S.C. §§ 5031–5037, is an act which accords a person who has not reached eighteen years of age, special treatment when in violation of a law of the United States. The juvenile must consent to be proceeded against under the Act and if consent is given, no criminal prosecution shall be instituted for the alleged violation and the consent shall be deemed a waiver of a trial by jury. *See* United States v. James, 464 F.2d 1228 (9th Cir. 1972).

jury trial. The appellant was informed that he was not entitled to a jury trial if he elected to proceed under an information as a juvenile delinquent; appellant thereupon elected to proceed to a trial by jury on the criminal indictment, because he did not want to waive his jury trial.

■ At the outset, the government has raised the issue of the standing of appellant Medina to challenge the constitutionality of the F.J.D.A. It points out that in United States v. James, 464 F.2d 1228 (9th Cir. 1972), the juvenile elected to accept the advantages of F.J.D.A. and thereby was foreclosed by its terms from her constitutional right to a jury trial. Her election, she unsuccessfully argued, compelled her to accept an unconstitutional condition, a waiver of a jury trial. In Medina, per contra, the election was to accept the constitutional right to a jury trial. Because the F.J.D.A. was not invoked here, the government contends that its provisions, conditions and limitations are not before the court at all and were not before the trial court.[2] Therefore, argues the government, there is no standing to consider it. We do not view the question of standing here so narrowly. The alternatives granted create a package. By choice of one, the other must be foregone. Each is one which has been provided for the protection and well being of a citizen. The right to a jury trial is a right guaranteed by the constitution. The rights under F.J.D.A. were granted by Congress in an attempt to benefit and protect the juvenile. Whether the question is raised by a defendant by choice of either, that choice would carry with it the elements of a case or controversy within the framework of Article III of the Constitution. The litigant has the personal stake and interest that imparts concrete adverseness as required by that provision. Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); Association of Data Processing Service Organizations, Inc., v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

■■ Having raised the issue of the constitutionality of section 5033 of the Act, however, that issue must be decided against him. United States v. James, 464 F.2d 1228 (9th Cir. 1972); Cotton v. United States, 446 F.2d 107 (8th Cir. 1971). Preferential and protective treatment of juveniles charged with crime has been a concern of both the Congress and the various states. This court has specifically decided that the Act of Congress in question here is not constitutionally impermissible. United States v. James, *supra*. It is not intended to be a criminal trial and no jury is required to be provided. McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971).

■ The second point urged by appellant is the alleged error of the court in refusing to give the "stake in the venture" instruction. The instruction was a lengthy one, the last sentence of which told the jurors,

"Each defendant must in some sense promote their venture himself, make it his own, have a stake in its outcome." C.T. at 38.

The sentence is part of a considerable discussion of the law of conspiracy by Judge Learned Hand in United States v. Falcone, 109 F.2d 579, 581 (2nd Cir. 1940). In affirming, the Supreme

---

2. Factually, this is not the case. At the hearing on jury trial setting on September 11, 1972, defendant's counsel called to the attention of the trial judge, the defendant's minority and made a request that he be given the advantages of the F.J.D.A. Said defendant's counsel:

"Mr. Ripley: Also I would ask that, in this particular incident, since the boy is seventeen and does not have a prior record, perhaps the courts could go along with letting the boy go via a juvenile delinquency complaint and also letting him have a jury trial. . . ." R.T. at 4.

The court thereupon directed defendant's counsel to explain to the defendant in open court the relative merits of each course of action and asked the defendant personally what choice he would make. He chose the jury trial. R.T. at 8.

Court did not mention the language quoted. United States v. Falcone, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940). The phrase "stake in the venture" appears again in Direct Sales Co. v. United States, 319 U.S. 703, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943). Again in discussing the elements of conspiracy the Court comments, with reference to the particular facts there,

> "And there is also a 'stake in the venture' which, even if it may not be essential, is not irrelevant to the question of conspiracy." 319 U.S. at 713, 63 S.Ct. at 1270.

We have been cited to no case which states that the language is essential to a proper instruction on conspiracy. An examination of the entire instruction given by the court here discloses that the elements of the offense were properly defined and no error of omission has been detected.

The judgment is affirmed.