**UNITED STATES of America,**
**Appellee,**

v.

**Anibal TORRES, Appellant.**

**No. 756, Docket 73-2493.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 1, 1974.

Decided June 14, 1974.

Robert B. Hemley, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., S. D. N. Y., and John D. Gordan III, Asst. U. S. Atty., on the brief), for appellee.

Sheila Ginsberg, The Legal Aid Society, New York City (William Gallagher, Federal Defender Services Unit, New York City, of counsel), for appellant.

Before WATERMAN and MULLIGAN, Circuit Judges, and BRYAN, District Judge. *

FREDERICK van PELT BRYAN, District Judge:

Anibal Torres appeals from a judgment of the United States District Court for the Southern District of New York finding him to be a juvenile delinquent after proceedings before Judge Gurfein without a jury. The appellant challenges the constitutionality under the Sixth Amendment [1] of the provisions of the Federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031–5037, which provide that juvenile delinquency proceedings shall be without a jury and that the required consent of a juvenile to be proceeded against as a juvenile delinquent is deemed a waiver of trial by jury.

The sixteen-year-old Torres was tried on a six-count information charging him with acts of juvenile delinquency in violation of various provisions of 18 U.S.C. § 474. That section deals with unlawful possession or use without proper authority of plates, photographs, prints or impressions of obligations of the United States.

Torres was found guilty on the third count of the information charging an act of juvenile delinquency is unlawfully, intentionally, knowingly and without proper authority making an unauthorized photographic negative of the face side of a one dollar Federal Reserve Note. He was found not guilty on the first count charging the possession of such negative with intention to use it in counterfeiting. Counts 2, 4, 5 and 6 were dismissed.[2]

Torres was arrested on charges of violation of 18 U.S.C. § 474 at the New York Training School for Boys at Otisville, New York, to which he had been committed as a juvenile by the Family Court of New York County. The acts with which he was charged had taken place there and involved, among other things, his use of the facilities of the print shop of the school to make allegedly unlawful and unauthorized negatives of a one dollar bill which he had borrowed from one of the supervisors.

Section 5032 of the Federal Juvenile Delinquency Act provides:

§ 5032. *Proceeding against juvenile delinquent*

A juvenile alleged to have committed one or more acts in violation of a law of the Unites States not punishable by death or life imprisonment, and not surrendered to the authorities of a state, shall be proceeded against as a juvenile delinquent if he consents to such procedure, unless the Attorney General, in his discretion has expressly directed otherwise.

In such event the juvenile shall be proceeded against by information and no criminal prosecution shall be instituted for the alleged violation.

---

* Frederick van Pelt Bryan, of the Southern District of New York, sitting by designation.

1. The Sixth Amendment provides, in pertinent part:
   "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury. . . ."

2. Judge Gurfein committed Torres to the custody of the Attorney General for a period of 60 days for observation and study pursuant to U.S.C. § 5034. Thereafter, Torres was committed to the custody of the Attorney General for 18 months pursuant to that section.

Section 5033 provides:

> § 5033. *Jurisdiction; written consent; jury trial precluded*
>
> District Courts of the United States shall have jurisdiction of proceedings against juvenile delinquents. For such purposes, the court may be convened at any time and place within the district, in chambers or otherwise. The proceeding shall be without a jury. The consent required to be given by the juvenile shall be given by him in writing before a Judge of the District Court of the United States having cognizance of the alleged violation, who shall fully apprise the juvenile of his rights and of the consequences of such consent. Such consent shall be deemed a waiver of a trial by jury.

Torres, as a juvenile alleged to have committed acts in violation of Federal law, was brought before Judge Stewart in the Southern District of New York, represented by assigned counsel. With the advice of counsel, he executed a consent in writing to be proceeded against as a juvenile delinquent pursuant to Sections 5032 and 5033. The information charging Torres with acts of juvenile delinquency in violation of Section 474 was then filed, and the case was assigned to Judge Gurfein.

When the information came on before Judge Gurfein, Torres' consent in writing to being proceeded against as a juvenile delinquent was presented to the Court and Judge Gurfein fully advised him of his rights and of the consequences of his consent, including his waiver of the trial by jury to which he would be entitled if tried as an adult.

Nevertheless, Torres' counsel contended that Torres was entitled to a trial by jury. He urged, first, that a juvenile had a right to a jury trial in a juvenile delinquency proceeding under the Sixth Amendment and that the provision of 18 U.S.C. § 5033 that such a proceeding "shall be tried without a jury" was therefore unconstitutional, relying on Nieves v. United States, 280 F.Supp. 994 (S.D.N.Y.1968) (three-judge court). Secondly, he urged that the provision of Section 5033 that a juvenile's consent to juvenile delinquency proceedings "shall be deemed a waiver of a trial by jury" was likewise unconstitutional because it unduly penalized the exercise of the juvenile's Sixth Amendment right to a jury trial and thus induced him to relinquish that right, relying on United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968).

Judge Gurfein rejected these contentions and held that these sections were constitutional and that Torres was not entitled to a jury, relying primarily on McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) and United States ex rel. Murray v. Owens, 465 F.2d 289 (2d Cir. 1972), cert. denied, 409 U.S. 1117, 93 S.Ct. 930, 34 L.Ed.2d 701 (1973). The proceedings then went forward before the Court without a jury and resulted in the judgment appealed from. On this appeal Torres makes substantially the same contentions he made below.

I.

Appellant maintains that McKeiver v. Pennsylvania, *supra*, did not determine that a juvenile had no constitutional right to a trial by jury in a federal juvenile delinquency proceeding and that the four cases in three circuits[3] which, relying on *McKeiver*, held that a juvenile had no such right, were wrongly decided. Appellant seeks to have this court hold that the provision of the Federal Act requiring that juvenile proceedings be without a jury is unconstitu-

---

3. Cotton v. United States, 446 F.2d 107 (8th Cir. 1971); United States v. King, 482 F.2d 454 (6th Cir.), cert. denied, 414 U.S. 1076, 94 S.Ct. 594, 38 L.Ed.2d 483 (1973); United States v. James, 464 F.2d 1228 (9th Cir.), cert. denied, 409 U.S. 1086, 93 S.Ct. 697, 34 L.Ed.2d 675 (1972); and United States v. Salcido-Medina, 483 F.2d 162 (9th Cir.), cert. denied, 414 U.S. 1070, 94 S.Ct. 582, 38 L.Ed.2d 476 (1973).

tional as violative of the Sixth Amendment.[4] This we decline to do.

*McKeiver* held that the juvenile appellants, who had been found to be delinquent in Juvenile Court proceedings in Pennsylvania and North Carolina, had no constitutional right to a trial by jury in the adjudicative stage of such proceedings.

Justice Blackmun, writing for the plurality, reviewed the history and background of the Juvenile Court system in the United States and discussed at length the way in which the system operated and the criticisms directed at it. He recognized that "the fond and idealistic hopes of the juvenile court proponents and early reformers of three generations ago have not been realized," (403 U.S. at 543–544), and that the system as now in operation has many defects and is subject to abuses. He concluded, however, that the Juvenile Court system providing intimate, informal, protective and paternalistic procedure for the juvenile accused of wrongdoing, with rehabilitation rather than punishment as its goal, still had promise. To impose on that system trial by jury as a matter of right would be a regressive and undesirable step. It would undermine the Juvenile Court's ability to carry out its praiseworthy functions and goals and "would tend once again to place the juvenile squarely in the routine of the criminal process" (403 U.S. at 547).

He concluded that a juvenile proceeding is not a "criminal prosecution" within the meaning and reach of the Sixth Amendment and that therefore the right to trial by jury in "all criminal prosecutions" guaranteed by the Sixth Amendment as extended to the states by the Due Process Clause of the Fourteenth Amendment[5] did not apply in such proceedings.[6] He concluded further that a jury trial was not constitutionally required under the due process standards of "fundamental fairness" applicable in juvenile proceedings, as developed in such cases as In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) and In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).[7] The states were, therefore, free to determine for themselves whether juvenile delinquency proceedings should be tried with or without a jury, and Pennsylvania and North Carolina had not deprived appellants of a constitutional right by denying them a trial by jury.[8]

The argument of the appellant in the case at bar, that proceedings under the Federal Juvenile Delinquency Act are so

4. The question remains open in this circuit, see United States v. Williams, 459 F.2d 903 (2d Cir. 1972), and United States v. Jenkins (496 F.2d 57, 75, n. 13) (2d Cir. 1974).

5. *See* Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), and Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968).

6. Mr. Justice Brennan, concurring and dissenting, agreed "with the plurality opinion's conclusion that the proceedings below in these cases were not 'criminal prosecutions' within the meaning of the Sixth Amendment." 403 U.S. at 553.

7. *See also*, Haley v. Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948); Gallegos v. Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L. Ed.2d 325 (1962); Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); DeBacker v. Brainard, 396 U.S. 28, 90 S.Ct. 163, 24 L.Ed.2d 148 (1969).

8. The plurality opinion pointed out that "at least 29 States and the District of Columbia by statute deny the juvenile the right to a jury trial in cases such as these. The same result is achieved in other States by judicial decision. In 10 States statutes provide for a jury trial under certain circumstances." (403 U.S. at 548–549 [footnotes omitted].) It further pointed out that the great majority of States which have faced the question since In re Gault, *supra*, and Duncan v. Louisiana, *supra*, have concluded that the considerations leading to the result in those cases do not compel a trial by jury in the juvenile court. Since then this court has reached the same conclusion as to the New York Juvenile Court system in United States ex rel. Murray v. Owens, *supra*. *See also*, In re D., 27 N.Y.2d 90, 313 N.Y.S.2d 704, 261 N.E.2d 627 (1970), appeal dismissed, 403 U.S. 926, 91 S.Ct. 2244, 29 L.Ed.2d 705 (1971).

materially different from those under state acts considered in *McKeiver* as to be criminal prosecutions subject to the Sixth Amendment jury trial guarantee, is not persuasive.

The Federal Act, passed as long ago as 1948, follows the pattern of the system for the treatment and handling of the juvenile delinquency problem generally in force in the United States.

A juvenile (a person under 18) accused of violation of federal law, if he consents and the Attorney General does not object, must be proceeded against as a juvenile delinquent. He is proceeded against by information and "no criminal prosecution shall be instituted for the alleged violation" 18 U.S.C. § 5032. The proceedings are before a United States District Judge without a jury and may be conducted "at any time and place within the district, in chambers or otherwise" 18 U.S.C. § 5033.

On a finding of delinquency, the Judge may place the juvenile on probation for a period not to exceed his minority or commit him to the custody of the Attorney General for a like period, which, in any event, must not exceed the term which might have been imposed in a criminal prosecution. The judge may require detailed study and report by the Attorney General on the juvenile's personal traits, social background and all other factors contributing to his delinquency.

If there is a commitment, "[t]he Attorney General may designate any public or private agency or foster home for the custody, care, subsistence, education, and training of the juvenile during the period" of commitment. 18 U.S.C. § 5034. When arrested, a juvenile is not to be placed in jail unless special circumstances dictate otherwise and if so, must be kept apart from adult prisoners. 18 U.S.C. § 5035. He may be released on parole at any time the Board of Parole deems proper. 18 U.S.C. § 5037.

The procedures established by the Federal Act were designed to protect the wayward youth from the stigma and other consequences of a criminal conviction and to rehabilitate rather than to punish him. Proceedings under the Act are plainly different from the ordinary criminal prosecution. It does not appear that the Federal Act is any less capable of carrying out its praiseworthy objectives or any more subject to the Sixth Amendment Jury Trial requirement than the state acts which were considered in *McKeiver*.

We hold, as did the Sixth, Eighth and Ninth Circuits,[9] that the principles applied in *McKeiver* are applicable to the Federal Juvenile Delinquency Act. Thus, the requirement that proceedings under the Act shall be tried without a jury does not violate the Sixth Amendment or Due Process standards of fundamental fairness, and there is no constitutional right to a jury trial in such proceedings.[10]

## II.

The appellant also contends that, even if there is no right to a jury trial in juvenile proceedings under the Federal Act, the provision of Section 5033 that the juvenile's consent to be proceeded against as a juvenile delinquent "shall be deemed a waiver of trial by jury" is unconstitutional. The argument focuses on the choice given to the juvenile between a criminal prosecution for the alleged offense in which he would be entitled to a jury trial and juvenile delinquency proceedings without a jury. Relying on United States v. Jackson, *supra*, appellant argues that the choice thus given the juvenile impermissibly penalizes and burdens the exercise of a Sixth Amendment jury trial right.

9. See footnote 3, *supra*.

10. Nieves v. United States, *supra*, on which appellant relies, holding there to be a constitutional right to a jury trial in Federal juvenile proceedings in the light of In re Gault, *supra*, and similar cases, was decided prior to *McKeiver* and the cases in other circuits just referred to. It no longer represents the law on this question.

In our view, the case at bar does not fall within the ambit of United States v. Jackson, *supra.* There the Supreme Court considered the provisions of the Federal Kidnapping Act which authorized the death penalty in aggravated kidnapping cases, only upon recommendation of a jury after a jury trial. However, if a defendant waived jury trial and was tried by a judge without a jury, or pled guilty, the death penalty could not be imposed. The Court held that to require that a jury trial must be waived in order to escape the threat of a death penalty needlessly chilled and placed an impermissible burden on the exercise of the defendant's basic constitutional right to a jury trial. The Court struck down the death penalty provision of the Act on that ground.

The defendant in *Jackson* was constitutionally entitled to a trial by jury on the charge of aggravated kidnapping whether the death penalty could be imposed on the jury's recommendation or whether no death penalty could result. Had Congress provided that a defendant so accused should be tried by the Court without a jury, it would have exceeded its powers and such a provision would have been clearly unconstitutional as violative of defendant's Sixth Amendment rights. Under the statutory scheme of the Federal Kidnapping Act, however, Congress required the defendant to relinquish the right to a jury trial to which he was constitutionally entitled, as a condition of avoiding the risk of the death penalty. By imposing such a condition and thus penalizing the assertion of defendant's constitutional right to be tried by a jury, Congress sought to accomplish indirectly what it could not do directly. In essence, the constitutional infirmity in *Jackson* stemmed from the defendant's undoubted right to a

jury trial in a criminal prosecution, with or without the imposition of the death penalty, and the circumscription of that right by the impermissible burden placed by the statute upon its exercise.

A juvenile has no comparable constitutional right to a trial by jury in proceedings under the Federal Juvenile Delinquency Act. Whether or not such proceedings should be tried without a jury was for Congress to determine. As we have held, the provision that proceedings under the Act shall be tried without a jury was a constitutional exercise of legislative power. Congress could have gone farther and required that no criminal prosecution could be instituted against a juvenile and that all juveniles alleged to have violated Federal law should be dealt with only in juvenile proceedings under the Act triable without a jury. Congress did not so provide. Instead, it permitted the juvenile to choose between the relatively beneficent and rehabilitative juvenile delinquency proceeding in which he was not entitled to a jury and prosecution as an adult with trial by jury. This provision is in furtherance of the strong public interest in encouraging resort to the procedures for handling and treatment of juvenile delinquents established by the Federal Juvenile Delinquency Act.[11]

■ The appellant's choice in the case at bar was freely, intelligently and voluntarily made. We hold that the provisions of the Act requiring that the consent of a juvenile to delinquency proceedings "be deemed a waiver of a trial by jury" are constitutionally valid. The choice afforded the appellant under these provisions did not deprive him of any constitutional right to a jury trial or impermissibly burden the exercise of any such right.[12]

11. It may be noted that in the trilogy of North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160, 27 L.Ed.2d 162 (1970); Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); and Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L. Ed.2d 747 (1970), in holding that, in plea bargaining, waiver of the constitutional right

to a trial induced by expectation of lesser penalties, did not violate defendants' constitutional rights, the Court considered the legitimate public interest in plea bargaining and the advantages of the bargain to both the public and the defendant.

12. The Sixth, Eighth and Ninth Circuits, in holding that under *McKeiver* a jury trial is

### III.

The appellant's additional contention that the evidence is insufficient to support the finding of juvenile delinquency is patently without merit and requires no discussion.

The judgment appealed from is affirmed.

not constitutionally required in federal juvenile proceedings, apparently assumed, without discussing In re Jackson, that the provision of the Act deeming consent to juvenile proceedings to be a waiver of jury trial is also constitutionally valid. Cotton v. United States, *supra*; United States v. King, *supra*; United States v. James, *supra*; United States v. Salcido-Medina, *supra*. Only Judge Hufstedler, dissenting in United States v. James (464 F.2d at 1230), was of the view that the waiver of jury trial requirement was unconstitutional under the principles enunciated in United States v. Jackson, *supra*. The pre-*McKiever* holding of the three-judge court in Nieves v. United States, *supra*, that the waiver of jury trial provision of the Federal Act was unconstitutional, was predicated on the assumption that there was a constitutional right to the jury trial in Federal juvenile delinquency proceedings. Chief Judge Fuld made the same assumption in his pre-*McKeiver* opinion in People v. A. C., 27 N.Y.2d 79, 86–87, 313 N.Y.S.2d 695, 700–701, 261 N.E.2d 620 (1970) in which the New York Court of Appeals held a similar waiver requirement in Youthful Offender proceedings unconstitutional.