UNITED STATES of America, Plaintiff,

v.

John DOE, a minor, Defendant.

No. CR–74–682–JAW.

United States District Court, D. Arizona.

Nov. 18, 1974.

Joseph Covington, Asst. U. S. Atty., for plaintiff.

Eugene R. Bracamonte, Tucson, Ariz., for defendant.

MEMORANDUM

RICHARD E. ROBINSON, Senior District Judge, Serving by Assignment.

This matter is before the Court on the Arraignment of the defendant, a minor, charged with juvenile delinquency under the Federal Juvenile Delinquency Act, 18 U.S.C.A. Section 5031 et seq. (1969), as amended, 88 Stat. 1133 (1974). This Memorandum opinion is filed by the Court because an important question of law concerning the interpretation of the 1974 amendments has been raised by the parties. Since, these are juvenile proceedings, the defendant's true identity is withheld.

When the defendant's case was brought on for arraignment defense counsel raised the issue of whether or not the defendant's waiver of his right, under the 1974 amendments, to be prosecuted as an adult constituted a waiver of his right to trial by jury. Since this was an issue of first impression, the Court continued the arraignment for three (3) days in order to permit the Court and counsel to research this question of law. At the subsequent arraignment, the Court ruling from the bench, held that a minor prosecuted under the Federal Juvenile Delinquency Act, was not entitled to a jury at the adjudicative stage of the proceedings. This Memorandum is filed to explain the basis for the Court's holding.

After the decision of In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), there was a great deal of speculation over the question of whether or not the Constitution required a jury at the adjudicatory stage of a juvenile delinquency proceeding. Despite the Supreme Court's finding in *Gault* that delinquency proceeding contained many of the attributes of adult criminal prosecutions, *Id.* 387 U.S. at 27, 87 S.Ct. 1428, and that juvenile delinquency procedures were often inadequate to assure fairness to the juvenile, *Id.* 387 U.S. at 18–19, 87 S.Ct. 1428, most state courts found that the right to trial by jury was not among the list of procedural requirements imposed upon the states by the due process clause. *See e.g.*, In re T.R.S., 1 Cal.App.3d 178, 81 Cal.Rptr. 574 (1969); Anno. "Right to jury trial in juvenile court delinquency proceedings", 100 A.L.R.2d 1241, 1242.

In other states, however, *Gault*, was interpreted to require a jury trial in any case where the defendant was charged with conduct which would be criminal if he were an adult. Peyton v. Nord, 78 N.M. 717, 437 P.2d 716 (1968); Anno. 100 A.L.R.2d 1241, 1245. These totally opposite results occurred because different state courts applied the test enunciated in *Gault* in different ways. *Gault* had held that the due process clause required a procedure which was sufficient to assure a "fundamental fairness" in the proceedings. The "fundamental fairness" test was not applied uniformly by the various state courts, until the controversy was finally resolved in the case of McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971).[1]

In *McKeiver* the Court held that "fundamental fairness" did not require states to provide a jury in juvenile delinquency proceedings. The Court found that while in practice there were similarities between juvenile and criminal proceedings, there were also fundamental differences which could be identified both practically and theoretically. *Id.* 403 U.S. at 544, 545, 91 S.Ct. 1976 note 5. They also noted that while delinquency procedures had not as yet lived up to their full potential, there were obvious advantages in continuing the effort to make the juvenile system work. *Id.* 403 U.S. at 547, 91 S.Ct. 1976. Since there were these practical and theoretical distinctions between criminal and juvenile delinquency proceedings the Court refused to extend the rule of Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), requiring the state to provide a jury trial whenever

1. That is not to imply that all states deny jury trials in juvenile proceedings. See Mc-Keiver v. Pennsylvania, 403 U.S. 528, n. 9, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971).

such a trial would be required under the Sixth Amendment, and held that the states could only be required to provide a jury if a jury trial was necessary to assure "fundamental fairness" to the juvenile defendant.

In determining whether or not a jury was required by the notion of "fundamental fairness" the Court turned to *Gault* and its progency and found that those cases had emphasized fairness in factfinding process. The Court said:

> "The requirements of notice, counsel confrontation, cross-examination, and standard of proof naturally flowed from this emphasis. But one cannot say that in our legal system the jury is a necessary component of accurate factfinding. . . . In· *Duncan* (Duncan v. Louisiana, *supra*) the Court stated, 'We would not assert, however, that every criminal trial— or any particular trial—held before a judge alone is unfair or that a defendant may never be as fairly treated by a judge as he would be by a jury.' (citation omitted). In *DeStefano*, [v. Woods 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968),] for this reason and others, the Court refrained from retroactive application of Duncan, an action it surely would not have taken had it felt that the integrity of the result was seriously at issue."

McKeiver v. Pennsylvania, *supra*, 403 U.S. at 543, 91 S.Ct. at 1985.

Consequently, the Court held that a jury trial was not required in state juvenile delinquency proceedings.

In the present case two questions arise: (1) is trial by jury constitutionally required under the Federal Juvenile Delinquency Act, as amended, and (2) is trial by jury provided for in the Federal Juvenile Delinquency Act, itself.

## THE SIXTH AMENDMENT

Since Duncan v. Louisiana, *supra,* has imposed the requirements of the Sixth Amendment upon state courts through the Fourteenth Amendment, there can be no doubt, in light of *McKeiver,* that the Sixth Amendment does not require a jury trial in federal juvenile delinquency proceedings, unless the federal delinquency act is distinguishable from the various state programs in such a way as to emphasize those aspects of the federal program which are unique to criminal prosecutions.

With only slight exceptions the Federal Juvenile Delinquency Act is comparable to the various state delinquency programs. For example, the federal program renounces the idea that the juvenile needs or deserves punishment, and emphasizes his rehabilitation; it requires that *alleged* delinquents be kept separate from possible harmful influences of adjudicated delinquents and felons; it attempts to establish an informal process of adjudication; it prohibits publicity harmful to the youth; finally, it regards delinquency as a status rather than crime. Indeed, only three factors distinguish federal procedures from most state procedures. First, there is a statutory preference that juveniles be handled in the state's juvenile courts. Second, the federal program defines "delinquency" as an act committed by a juvenile which violates one or more of the laws of the United States. Many state statutes proscribe both conduct that would be criminal if committed by an adult and incorrigibility or truancy, which are not crimes. Finally, the federal program is administered by the same federal judges who administer the federal judicial system generally, while many state programs create a separate juvenile court system or appoint or assign special judges to handle juvenile matters.[2]

---

2. These three distinctions between federal and most state juvenile programs do not, to any significant degree, criminalize the federal process.

The statutory preference that juveniles be handled by state authorities is merely a rec-

ognition of the fact that the states are initially responsible and primarily concerned with the conduct of their children. The statute, itself, provides that if in the opinion of the United States Attorney, the state involved is not equipped to handle juvenile matters

None of these factors suggest that the principles of the federal juvenile delinquency program are significantly different from those of the states. The mere fact that the federal program contains some differences is not, of course, in and of itself, enough. There are often wide variations among the various state programs. However, virtually all of the state juvenile programs and the federal programs contain, at least, two characteristics which distinguish them substantially from all criminal prosecutions. One, juvenile delinquency is regarded as a status rather than crime which means that the delinquent does not acquire a criminal record which will follow him in his adult life: and two, the juvenile programs repudiate the idea that the delinquent should be punished and establishes as their goal, instead the development of characteristics in the delinquent which will turn him away from a life of lawlessness and toward more constructive pursuits.

██ Since the Court cannot find a significant difference between the federal juvenile program and the various state programs, it cannot find that a jury trial is guaranteed under the Sixth Amendment in federal juvenile delinquency proceedings.

### PL 93–415, TITLE V

Even though a jury trial may not be required under the Sixth Amendment, Congress may provide for trial by jury in juvenile proceedings if it so desires.

For two reasons it is not altogether clear that Congress did not intend for juveniles to have a right to a jury at the adjudicatory stage of delinquency proceedings.

Though the amended Federal Juvenile Delinquency Act does not, now, expressly refer to a right to trial by jury, the statute, prior to its amendment, did and the manner in which Congress has amended the relevant statutory section raises the possibility that a jury trial may now be called for under the statute.

Under the old statutory scheme the law provided that a juvenile was to be treated as an adult when prosecuted in the federal court unless the juvenile, consented in writing to be treated under the juvenile delinquency act. The statute provided that such consent by the juvenile was to be treated as a waiver of a jury trial.[3] Accordingly, the question of a juvenile right to trial by jury under the Federal Juvenile Delinquency Act has seldom arisen. *But see*, Cotton v. United States, 446 F.2d 107 (8th Cir. 1971).

Under the new amendments, however, the statute provides that all juveniles coming before the federal courts are to be processed under the Federal Juvenile Delinquency Act, unless they file a written request, with the advice of counsel, to be treated as an adult.[4] Con-

---

then such juvenile shall be processed in the federal court under the Federal Juvenile Delinquency Act.

The fact that the federal act only proscribes conduct which would be criminal if committed by an adult, does not, of course, say anything significant about the federal juvenile process, or its purpose or goals. Finally, the mere fact that the federal system is administered by the same personnel who administer federal criminal process, does not alter the character of the federal juvenile program to any significant degree, or imply that federal judges will fail to recognize the distinct responsibilities the federal program places upon them.

3. Prior to its amendment in 1974, 18 U.S.C.A. Sec. 5032, 62 Stat. 857 provided in pertinent part:

"A juvenile alleged to have committed one or more acts in violation of (federal) law . . . shall be proceeded against as a juvenile delinquent if he consents to such procedure . . . ."
18 U.S.C.A. Sec. 5033, 62 Stat. 857 then provided, in pertinent part, that "[s]uch consent shall be deemed a waiver of a trial by jury."

4. The 1974 amendments to 18 U.S.C.A. Sec. 5032, 88 Stat. 1133, provide in pertinent part:
"A juvenile who is alleged to have committed an act of juvenile delinquency . . . shall be proceeded against under this chapter unless he has requested in writing upon advice of counsel to be proceeded against as an adult . . . ."

sequently, now, a juvenile processed under the juvenile delinquency act is not required to waive a jury trial in order to acquire the benefits of being prosecuted as a juvenile.

Ordinarily, Congress' deletion of the waiver language in the 1974 amendments would strongly suggest that Congress had changed its thinking on the question of jury trials in delinquency proceedings, and that such trials were now required. However, in order to arrive at that conclusion one would have to start with the assumption that in the absence of the waiver provided under the pre-amendment program, a jury trial would have been required in delinquency proceedings; for unless we assume from the start that a jury is required in the absence of the waiver the deletion of the waiver language is meaningless.

It was noted above that the *McKeiver* case found that a jury trial was not required by the Sixth and Fourteenth Amendments in proceedings brought under state juvenile programs. This Court has concluded that the rationale of *McKeiver* is also applicable to the Federal Juvenile Delinquency Act. *See also* Cotton v. United States, *supra.* Accordingly, if a right to trial by jury arises because of the 1974 amendments, it must be found to arise from a source other than the Sixth Amendment.

■ The Juvenile Delinquency Act, itself has never provided for trial by jury (except for the negative inference now under discussion). Rule 54(b)(5) of the Federal Rules of Criminal Procedure does provide in pertinent part:

"Except as provided in Rule 20(d) (these rules) do not apply to proceedings under 18 U.S.C., Chapter 403 —Juvenile Delinquency—so far as they are inconsistent with that chapter."

However, Rule 23(a) "Trial by Jury," provides for a jury trial only in cases

*"required* to be tried by a jury." (emphasis added). Absent a constitutional or statutory right to jury trial Rule 23(a) would not seem to require a jury in any particular type of case. Since the Court is not aware of any other statute or rule requiring a jury trial in federal juvenile proceedings it must conclude, in light of *McKeiver* and *Cotton,* that no constitutional or statutory right to trial by jury in federal juvenile delinquency proceedings ever existed.

The Court does not draw this conclusion lightly. For, among other things, this result seems to suggest that the waiver language under the pre-amendment act was superfluous, and courts are extremely reluctant to treat statutory language as superfluous. Fortunately, in this case, the Court is not required to regard the waiver language under the pre-amendment statute as meaningless since that language finds meaning both in an historical context and a legislative context.

Prior to *McKeiver* the jury trial issue was vigorously debated. As noted above, the various state courts had been persuaded by plausible arguments to render holdings on both sides of the issue. The fact of the matter, was, of course, that no one was sure whether a jury trial was constitutionally required or not.[5] In such a climate it would, of course, be very logical for a legislature, convinced of the impropriety of trial by jury in juvenile proceedings, to require one wishing to be prosecuted as a juvenile, to waive whatever right to trial by jury they might otherwise have. Such a legislative intent seems to this Court to be far more plausible than the intent to create a statutory right by negative inference.

Furthermore, even if the historical context of the pre-amendment statute is not considered, it is perfectly consistent with the decision this Court reaches, today, to interpret the waiver language

5. The controversy was greatly enhanced by the *Gault* decision. However, the controversy did not begin with *Gault.* Prior to 1967 courts were already divided on the issue, when the allegedly delinquent conduct would have been criminal if it had been committed by an adult. *See* Anno. 100 A.L.R.2d 1241, 1245.

of the statute as a legislative device to insure that the juvenile and his counsel are fully aware of the significance of the decision to be processed as a juvenile upon the defendant's right to trial by jury by requiring an express waiver of this most cherished constitutional safeguard before such right was lost to them.

In either of the above two cases, the waiver language retains its meaning and is consistent with this Court's holding today.

The final indicia that a jury trial might be required under the amended act arises out of the legislative history of the 1974 amendments. 1974 U.S. Code Congressional and Administrative News 4235, 4273, quoting from Senate Report No. 93–1011, July 16, 1974, states:

> "*Section 207* amends 18 U.S.C. Sec. 5037 to provide that a juvenile is entitled to all rights that would be accorded an adult in a criminal prosecution, except the right to a grand jury indictment. The right to a public trial is limited by permitting access only by the press, and only under the condition that information that could identify the juvenile not be disclosed." [6]

This assertion is not, however, supported in the language of the amendment. It is true that the right to indictment by a grand jury and a public trial are the only two *constitutional* rights expressly withheld from juvenile proceedings. However, there is no suggestion that all of the rights of a *criminal* defendant apply in juvenile proceedings. Indeed, Rule 54(b)(5), quoted above, would seem to directly contradict this assertion.

Furthermore, the thrust of the 1974 amendment is not to further liken juvenile proceedings to a criminal prosecution, but rather to further distinguish them from one another. In this Court's judgment it would go against the policy of the amendments as a whole to permit an assertion in the legislative record, which is wholly unsupported in the language of the act, to cause juvenile proceedings to take on the characteristics of a criminal prosecution to any significant degree.

Accordingly, it is the holding of this Court that a minor processed under the Federal Juvenile Delinquency Act, as amended, is not entitled to trial by jury.

6. The Conference Report No. 93–1298, 1974 U.S.Code Congressional and Admin.News 4285, 4286 states that only the Senate Bill, S. 821 contained amendments to the Federal Juvenile Delinquency Act and that these Senate amendments were adopted by the conference committee.