**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Tommy CUOMO, Defendant-Appellant.**

**No. 74–4210.**

United States Court of Appeals,
Fifth Circuit.

Jan. 16, 1976.

C. Larry Mathews, Jr., El Paso, Tex., (Court-appointed), for defendant-appellant.

John E. Clark, U. S. Atty., San Antonio, Tex., William B. Hardie, Jr., Asst. U. S. Atty., El Paso, Tex., for plaintiff-appellee.

Before WISDOM, CLARK and RONEY, Circuit Judges.

WISDOM, Circuit Judge:

The novel questions this appeal presents concern the manner in which the federal government is required to prosecute a case against a juvenile under the Juvenile Justice and Delinquency Prevention Act of 1974, 18 U.S.C. §§ 5031–42.

## I

## THE FACTS

Tommy Cuomo, the defendant-appellant, with three other juveniles, was arrested on September 24, 1974, for allegedly participating in a robbery of $6000 from the First National Bank in Fabens, Texas. The juveniles ranged in age from sixteen to ten; Cuomo was thirteen. The United States magistrate issued the arrest warrant on a complaint filed by the Federal Bureau of Investigation. The magistrate then placed Cuomo in federal custody and lodged him in the El Paso County Jail for six days, until he was released on bond.

Bond conditions formulated by the magistrate included requirements that Cuomo immediately register at school, that he remain at home after school unless accompanied by one of his parents, and that he conduct himself properly in class at all times and create no disturbance. On October 25 the United States magistrate issued an arrest warrant based on alleged violations of the bond. Again, Cuomo was confined in the El Paso County Jail for a six-day period after which bond was reinstated. In a trial before the district court on December 3, 1974, Cuomo was found guilty of violating 18 U.S.C. § 2113.[1]

## II

### WHAT KIND OF CERTIFICATION IS REQUIRED BY THE ACT?

Section 5032 of 18 U.S.C. reads, in part:

A juvenile alleged to have committed an act of juvenile delinquency shall not be proceeded against in any court of the United States unless the Attorney General, after investigation, certifies to an appropriate district court of the United States that the juvenile court or other appropriate court of a State (1) does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, or (2) does not have available programs and services adequate for the needs of juveniles.

If the Attorney General does not so certify, such juvenile shall be surrendered to the appropriate legal authorities of such State.

The government filed two certifications in this case. The Assistant United States Attorney in charge of this case signed and filed the first on November 12, 1974. After the defendant filed a motion to strike this certification, the United States Attorney signed another certification and filed it on December 2, 1974, the day before trial. The district court denied the defendant's motion to strike the second certification on December 3, 1974.

The appellant first contends that § 5032 prohibits any official other than the Attorney General from making the required certification. If, however, the statute is not so limited, the appellant argues that a proper certification has not been made because of the Attorney General's failure to delegate his responsibility to the prosecuting attorneys who actually filed the certifications.

The argument that the statute must be interpreted as limiting the certification power to the Attorney General is based upon *United States v. Giordano,* 1974, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341. In *Giordano* the Supreme Court held, in construing 18 U.S.C. § 2516(1),[2] that Congress intended specifically to limit, to the Attorney General and his designated Assistant Attorney General, the power to authorize applications for wiretap permits. The appellant contends that § 5032 should be construed similarly to § 2516(1), in that the congressional intent in each case—to limit federal involvement in particular areas— is similar.[3]

---

1. Section 2113 makes it unlawful to steal or attempting to steal property or money from banks, credit unions, and savings and loan associations.

2. Section 2516(1) provides in part that "[t]he Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for . . . an order authorizing or approving the interception of wire or oral communications . . .".

3. See Senate Report No. 93–1011, 1974 U.S. Code Cong. & Admin.News, p. 5283 (one purpose of the Act is to provide "for Federal leadership and coordination of the resources necessary to develop and implement at the State and local community level effective programs for the prevention and treatment of juvenile delinquency"), p. 5286 (juvenile delinquency "is essentially a State and local problem which must be dealt with by the State and local governments . . .."). See also 18 U.S.C. § 5001, which provides in part that:

Two factors militate against the appellant's construction of the Act. First, the *Giordano* Court held that 28 U.S.C. § 510,[4] which might otherwise provide authority for the Attorney General to delegate his powers, did not apply where "the matter of delegation is expressly addressed". 416 U.S. at 514, 94 S.Ct. at 1823. In *Giordano,* the statute gave power to the Attorney General and "any Assistant Attorney General specifically designated by the Attorney General". Here, the statute says nothing about delegation, and § 510 is therefore presumptively applicable. The second distinguishing factor in *Giordano* lies in the congressional history relied upon by the Court. The Court found that this history supported the view that Congress desired to screen wiretap applications only through the highest-level Justice Department officials, through "publicly responsible official[s] subject to the political process".[5] Here, however, there is no analogous legislative history that suggests that only the Attorney General was to be allowed to screen requests to prosecute juveniles. In short, *Giordano* does not apply here, nor is there any other authority which supports the appellant's extremely narrow reading of § 5032.[6]

The next question, then, is whether the Attorney General has in fact delegated his § 5032 power to the Assistant United States Attorney and United States Attorney who filed certifications in this case. Order No. 579–74, 39 Fed. Reg. 37771 (Oct. 24, 1974) states that:

> The Assistant Attorney General in charge of the Criminal Division and his Deputy Assistant Attorneys General are each authorized to exercise the power and authority vested in the Attorney General by Sections 5032 and 5036 of title 18, United States Code, relating to criminal proceedings against juveniles. The Assistant Attorney General in charge of the Criminal Division is authorized to redelegate any function delegated to him under this section to United States Attorneys.

28 C.F.R. § 0.57.

There is no mention of delegation to Assistant United States Attorneys. Therefore, the certification filed on November 24, 1974, by the Assistant United States Attorney, may not have been a certificate within the meaning of the statute.[7] We need not decide this issue here, however.

---

whenever any person under twenty-one years of age has been arrested, charged with the commission of an offense punishable in any court of the United States or of the District of Columbia, and, after investigation by the Department of Justice, it appears that such person has committed an offense or is a delinquent under the laws of any State or of the District of Columbia which can and will assume jurisdiction over such juvenile and will take him into custody and deal with him according to the laws of such State or of the District of Columbia, and that it will be to the best interest of the United States and of the juvenile offender, the United States Attorney of the district in which such person has been arrested may forego his prosecution and surrender him as herein provided.

4. The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General. 28 U.S.C. § 510.

5. 416 U.S. at 520, 94 S.Ct. at 1829, *quoting* Senate Report No. 90–1097.

6. It is significant that 18 U.S.C. § 5001, *quoted* note 3 *supra,* has never been held to require actual "investigation by the Department of Justice", but apparently vests considerable discretion in the United States Attorneys. See also *District of Columbia v. P. L. M.,* D.C.App. 1974, 325 A.2d 600, 603, observing that one of the primary purposes of that statute was to authorize transportation expenses, so that federal officers could return juveniles to their home states after apprehension elsewhere.

7. At oral argument, this Court questioned the authority of the Assistant United States Attorney to act on behalf of the United States Attorney. Counsel for the appellee asserted there that such authority existed at the time the first certification was filed, but counsel has supplied us with no evidence of such authority. Because a proper certification was eventually filed, we do not decide whether the Assistant was authorized to file the required certification.

■ Order No. 579–74 does make express provision for further delegation to United States Attorneys, to whom it authorizes the Assistant Attorney General of the Criminal Division of the Justice Department to redelegate his § 5032 powers. This order is within the scope of § 510, which allows the Attorney General to authorize the performance of any of his functions by any other Justice Department officer. The final question, then, is whether the Assistant Attorney General delegated his § 5032 power to the United States Attorney who purported to act within that power in this case.

■ A copy of a teletype signed by Henry Petersen, Assistant Attorney General of the Criminal Division, was submitted to the district court on November 15, 1974. The teletype reads, in part, as follows:

> The certification required under the new subsection 5032 should be made by the United States Attorney of the District in which the offense occurred. Authority to proceed is based on an Order of the Attorney General and my directive, both dated October 16, 1974.[8]

The appellant's argument that this teletype does not constitute a delegation, but merely refers to a delegation, is unpersuasive. The teletype directly states that the United States Attorney has the power to make the required certification. The United States Attorney had the power, therefore, to certify to the district court that the Texas courts did not want to assume jurisdiction over Cuomo's alleged acts of juvenile delinquency.[9]

## III

## WHEN IS CERTIFICATION NECESSARY?

The appellant argues that, even if a proper certification was filed, the filing was untimely and that this untimeliness requires us to order the case against him dismissed. He stresses that the statute is mandatory in its provision that the juvenile shall not be proceeded against until the certification is filed. He asserts that "proceeded" is a broad term, so broad, in fact, that the filing of a criminal complaint by the F.B.I. was a "proceed[ing] . . . in . . . [a] court". The government, on the other hand, argues that the certification need be filed only prior to arraignment in the district court.[10]

■ We hold that the government's interpretation of § 5032 is correct. We base this holding upon the clear, unequivocal language of the statute. The statute does not expressly apply to the commencement of an action against a juvenile, nor may its certificate requirement reasonably be read as a condition precedent to the apprehension and detention of an alleged juvenile delinquent by federal criminal enforcement authorities and magistrates. The statute says that the alleged delinquent "shall not be proceeded against in any *court*", that the certificate should be filed in "an appropriate *district court*", and that "[i]f an alleged juvenile delinquent is not surrendered to authorities of the state or the District of Columbia pursuant to this section, *any proceedings against him shall be in an appropriate district court*

8. We note that, although the teletype refers to an order of October 16, 1974, the Attorney General's order was not published in the Federal Register until October 24, 1974. Even if we, relying on the Federal Register date, assume that there was no order as of October 16, the Assistant Attorney General's delegation to United States Attorneys became effective on October 24.

9. One federal Court of Appeals has implicitly concluded that the Attorney General has delegated his § 5032 powers to the appropriate United States Attorneys, and that this delega-

tion poses no contradiction to the statutory scheme. See *United States v. Vancier*, 2 Cir. 1975, 515 F.2d 1378, 1379 n. 1.

10. The government also suggests that custodial power is a prerequisite to the investigation that the United States Attorney is required by § 5032 to make. The government did not explain, however, why this is so. The investigation seemingly requires the United States Attorney to examine state facilities and communicate with state authorities. Neither function necessitates the custody of the alleged delinquent.

*of the United States*" (emphasis added). Without deciding the latest possible time for filing, we hold that the filing of a proper certificate prior to arraignment before the district court in the case at bar was sufficient compliance with § 5032 to permit the proceeding against Cuomo to continue. While the provision obviously intends that deference be given state court juvenile processes where they are available, its phraseology requires no abdication of federal jurisdiction to begin an action.

## IV

## HAS CUOMO'S STATUTORY RIGHT TO A SPEEDY TRIAL BEEN VIOLATED?

Section 5036 of Title 18 provides:

If an alleged delinquent who is in detention pending trial is not brought to trial within thirty days from the date upon which such detention was begun, the information shall be dismissed on motion of the alleged delinquent or at the direction of the court, unless the Attorney General shows that additional delay was caused by the juvenile or his counsel, or consented to by the juvenile and his counsel, or would be in the interest of justice in the particular case. Delays attributable solely to court calendar congestion may not be considered in the interest of justice. Except in extraordinary circumstances, an information dismissed under this section may not be reinstituted.

The appellant vigorously contends that he was "detained", within the ambit of § 5036, from the time he was arrested and throughout the time he was released from custody on restrictive bail conditions. Since there were seventy days between the time of his arrest and the time of his trial, he asserts that the information against him must be dismissed. The government, on the other hand, argues that Cuomo was "in detention" only while he was in the El Paso County Jail.

■ The statutory language pertinent to the meaning of "detention" is unclear. Section 5035, entitled "Detention prior to disposition", requires that, wherever possible, "detention shall be in a foster home or community based facility." [11] This suggests that, in at least some instances, "detention" need not be in a physically restrictive institution. On the other hand, the wording of § 5036—particularly, the phrase "*in* detention" (emphasis added)—suggests that detention, for speedy trial purposes, does mean confinement to an institution. We resolve this confusion by relying on the statutory history of the Act and by drawing conclusions about the meaning of "detention" from an abundance of writing about the juvenile court process.

The legislative history shows that the drafters of the Act first adopted, but later rejected a provision requiring a trial within thirty days of arrest. Compare Senate Report No. 93–1011, 1974 U.S. Code Cong. & Admin.News, p. 5321 (discussion of proposed amendment to § 5036), with 18 U.S.C. § 5036. The legislative history is silent about the reasons for this change. In view of § 5034, which allows nonrestrictive release of an arrested juvenile upon the promise of his parents to return him to court whenever necessary, the rejection of an arrest-related speedy trial provision still seems consistent with § 5036's application when restrictive bail conditions have been set. It appears, however, that the drafters were unwilling to place a heavy burden of speed upon the district courts. If we held that restrictive bail conditions trig-

---

11. Section 5035 also provides that

[e]very juvenile *in custody* shall be provided with adequate food, heat, light, sanitary facilities, bedding, clothing, recreation, education, and medical care, including necessary psychiatric, psychological, or other care and treatment (emphasis added).

This implies that detention may be contrasted with custody and that only the latter refers to physical restriction. Nevertheless, the analysis of "detention" in the text overrides this implication.

gered the 30-day speedy trial clause, we could be replacing much of the burden that Congress removed. This step would be taken, of course, if required by the statute, regardless of its legislative history. But the statute does not clearly impose a 30-day trial requirement in restrictive bail situations.

■ Second, and more important, is the fact that, in the understanding of juvenile court specialists [12] and the language of statutes,[13] model codes,[14] and judicial opinions,[15] "detention" almost in- variably is used as a term of art to mean physically restrictive custody, confinement within a specific institution. We must, of course, interpret particular words of a statute in their commonly understood sense, unless the statute obviously requires a different interpretation.[16] The sense of a word that is commonly used as a term of art in a particular discipline is the relevant sense for purposes of statutory construction, where the statute being construed deals with that discipline.[17]

---

12. Donald Hammergren, a past president of the National Juvenile Detention Association, quotes the National Council of Crime and Delinquency's definition of detention as follows:

> Detention is the temporary care of children in *physically restricted facilities* pending court disposition or transfer to another jurisdiction or agency. If detention is used properly, these are children who have committed delinquent acts and for whom secure custody is required for their own or the communities' protection.

NCCD "Standards and Guides for the Detention of Children and Youth", *quoted in* Hammergren, *The Role of Juvenile Detention in a Changing Juvenile Justice System*, 24 Juvenile Justice No. 3, at 46 (1973). This definition is corroborated by the fact that the word detention is repeatedly used by experts in their discussions of jails and juvenile halls. See The President's Commission on Law Enforcement and Administration of Justice, *Task Force Report: Juvenile Delinquency and Youth Crime* 36–37, 77 (1967); T. Johnson, Introduction to the Juvenile Justice System 91–94 (1975); National Council on Crime and Delinquency, *Correction in the United States, quoted in* S. Fox, Modern Juvenile Justice (1972); P. Hahn, The Juvenile Offender and the Law, §§ 19.4–.5 (1971); Sarri, *The Detention of Youth in Jails and Juvenile Detention Facilities*, 24 Juvenile Justice No. 3, at 5–6 (1973); Wallace & Brennan, *Intake and the Family Court*, 12 Buff.L. Rev. 442, 450 (1963); Paulsen, *The New York Family Court Act*, 12 Buff.L.Rev. 420, 437–39 (1963); Outerson, *Family Court Jurisdiction*, 12 Buff.L.Rev. 467, 475–76 (1963).

13. See, e. g., Fla.Stat.Ann. §§ 39.01(17), (18), (25), 39.03(3)(b), (c) (West 1974); Code Ga. Ann. tit. 24A, §§ 1401–04 (1971).

14. See National Council on Crime and Delinquency, Model Rules for Juvenile Courts, art. V, rules 12, 13, reprinted in P. Hahn, *supra* note 12, at 355–56. Although Uniform Juvenile Court Act § 16(a)(1) suggests that detention may occur in "a licensed foster home or a home approved by the court", § 14 of this Act makes it clear that the purposes of detention—prevention of the juvenile evading the court's power, protection of person or property—require that detention be physically restrictive custody. The Act is reprinted in P. Hahn, *supra* note 12, at 366–93.

15. See, e. g., *Baldwin v. Lewis*, E.D.Wis.1969, 300 F.Supp. 1220, 1223–28, 1231–33; *Doe v. State*, Alaska 1971, 487 P.2d 47; *In re M.*, 1970, 3 Cal.3d 16, 89 Cal.Rptr. 33, 473 P.2d 737.

16. See 2A A. Sutherland, Statutory Construction § 45.08, at 24, *citing Mercantile Bank & Trust Co. v. United States*, 8 Cir. 1971, 441 F.2d 364.

17. See 2A A. Sutherland, *supra* note 16, §§ 45.08, at 23, 47.27, at 137, 47.29, at 150 (1973); cf. *Bradley v. United States*, 1973, 410 U.S. 605, 609, 93 S.Ct. 1151, 35 L.Ed.2d 528 ("prosecution" interpreted in legal sense rather than everyday sense); *Barber v. Gonzales*, 1954, 347 U.S. 637, 638–43, 74 S.Ct. 822, 98 L.Ed. 1009 ("entry" in § 19(a) of the Immigration Act of 1917 must be construed as "entry from foreign country", in accordance with prior legal understanding of the term); *Hawley v. Diller*, 1899, 178 U.S. 476, 483–88, 20 S.Ct. 986, 44 L.Ed. 1157 ("bona fide purchaser" in statute was to be construed as referring only to purchasers of legal title); *Trixler Brokerage Co. v. Ralston Purina Co.*, 9 Cir. 1974, 505 F.2d 1045, 1050 ("issue", as used in Fed.R.Civ. P. 38(b), must be construed in its legal sense); *Haynie v. Northern Pacific Ry.*, 1971, 158 Mont. 247, 490 P.2d 715 ("plug", in statute relating to seismographic shot hole, must be given its technical meaning as used in the seismographic trade). See also Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum.L.Rev. 527, 536 (1947):

> Even when it has spoken, it is as true of Congress as of others that what is said is what the listener hears.

· · · · ·

Our conclusion is that the phrase "in detention" in § 5036 means "in physically restrictive detention amounting to institutionalization". Section 5036 was not transgressed by Cuomo's prosecution.

V

IS THERE A RIGHT TO A
JURY TRIAL?

A. Constitutional Right to a Jury Trial.

■ In *McKeiver v. Pennsylvania*, 1971, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647, the Supreme Court held that the Fourteenth Amendment did not impose upon the states a jury trial requirement in juvenile delinquency adjudications. Despite *McKeiver*, the appellant urges this Court to hold that the Constitution requires the federal government to provide jury trials in juvenile proceedings. This requirement, it is said, stems directly from the Sixth Amendment,[18] which allegedly places stronger restrictions upon the federal government than does the Fourteenth Amendment upon the states. In rejecting Cuomo's argument and holding that there is no constitutional right to a jury trial in federal juvenile delinquency proceedings, we follow the lead of every Court of Appeals that has considered this question. See *United States v. Torres*, 2 Cir. 1974, 500 F.2d 944, 946–48; *United States v. Salcido-Medina*, 9 Cir. 1973, 483 F.2d 162, 164, *cert. denied*, 414 U.S. 1070, 94 S.Ct. 582, 38 L.Ed.2d 476; *United States v. King*, 6 Cir. 1973, 482 F.2d 454, 456, *cert. denied*, 414 U.S. 1076, 94 S.Ct. 594, 38 L.Ed.2d 483; *United States v. James*, 9 Cir. 1972, 464 F.2d 1228, 1229–30, *cert. denied*, 409 U.S. 1086, 93 S.Ct. 697, 34 L.Ed.2d 675; *Cot-*

*ton v. United States*, 8 Cir. 1971, 446 F.2d 107, 110.[19]

As the *Torres* court correctly observed, the *McKeiver* decision was based substantially upon a realization that juvenile delinquency proceedings are intended to be "intimate, informal, protective and paternalistic". 500 F.2d at 947. There is nothing to suggest that Congress intended federal juvenile proceedings to vary from this norm, or that there is such variance. Therefore, the imposition upon the federal juvenile system of a jury trial right would be the same "regressive and undesirable step", *id.* at 947, that a similar imposition would be upon the states. See generally 403 U.S. at 543–47, 91 S.Ct. 1976.

B. Statutory Right to a Jury Trial.

■ Cuomo next contends that he was statutorily entitled to a jury trial. The Act does not explicitly afford a jury trial right to an alleged delinquent. Nevertheless, Cuomo asserts that the absence in the Act of a provision denying a jury trial is decisive, in that the superseded Federal Juvenile Act of 1948 explicitly required that a jury be waived before an alleged offender was treated as a juvenile. Now that the statute says nothing about jury trials, Cuomo contends that the statute implicitly affords him a jury trial right.

The same contention was considered and rejected in *United States v. Doe*, D.Ariz.1974, 385 F.Supp. 902, 905–07, and we agree with the conclusion of the district court in that case.

The absence of the waiver provision in the Act cannot be regarded as significant. The district court in *Doe* recognized, as do we, that the probable reason

We must, no doubt, accord the words [of a statute] the sense in which Congress used them. . . . It will help to determine for whom they were meant. . . . If a statute is written for ordinary folk, it would be arbitrary not to assume that Congress intended its words to be read with the minds of ordinary men. If they are addressed to specialists, they must be read by judges with the minds of the specialists.

18. The Sixth Amendment provides in part that

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . .

19. See also *United States v. Doe*, D.Ariz.1974, 385 F.Supp. 902, 902–05.

for the waiver provision was the uncertainty, before *McKeiver*, of the constitutionality of non-jury juvenile delinquency proceedings. *Id*. at 906. Moreover, the waiver provision could well have been intended merely to insure that

> the juvenile and his counsel are fully aware of the significance of the decision to be processed as a juvenile upon the defendant's right to trial by jury by requiring an express waiver of this most cherished constitutional safeguard . . . .

*Id*. at 907. It is likely that the absence of the waiver provision in the Act simply reflects Congress's awareness that there is, in fact, no constitutional jury trial right for alleged juvenile delinquents.[20]

The most important reason for holding that the Act does not require a jury is, of course, the same reason for holding that the Constitution does not require one. The Act does not treat alleged juvenile delinquents as alleged criminals. The Act envisions "an informal process of adjudication," for § 5032 states that "the court may be convened at any time and place within the district, in chambers or otherwise". It would be bewildering if Congress, while vesting the district courts with the power to convene themselves "at any time and place", even "in chambers", severely limited the district court's flexibility by requiring the court to bring with it a jury. As the *McKeiver* court stated, 403 U.S. at 545, 91 S.Ct. at 1986:

> There is a possibility, at least, that the jury trial, if required . . ., will remake the juvenile proceeding into a fully adversary process and will put an

effective end to what has been the idealistic prospect of an intimate, informal protective proceeding.

This Court is unwilling to hold that Congress intended, by its silence about the right to a jury trial, to take this risk.

## CONCLUSION

We have found that the United States Attorney properly filed a § 5032 certification. We have also found that the appellant's right to a speedy trial was not violated, and that the appellant had no right to a jury trial. The judgment of the district court is affirmed.

---

**20.** We note the following language in the Senate Report on the Act:

> The bill also amends the Federal Juvenile Delinquency Act, virtually unchanged for the past thirty-five years, to provide basic procedural rights for juveniles who come under Federal jurisdiction and to bring Federal procedures up to the standards set by various model acts, many state codes and court decisions.

1974 U.S.Code Cong. & Admin.News, p. 5284. There has been no showing that any model act

or state code requires a jury trial. Moreover, only one federal court had held that there was a constitutional right to a jury trial for alleged juvenile delinquents, see *Nieves v. United States*, S.D.N.Y.1968, 280 F.Supp. 994, whereas many more higher federal courts had come to the opposite conclusion. The legislative history suggests, therefore, that no right to a jury trial was contemplated by the drafters of the Act.