UNITED STATES of America,
Plaintiff–Appellee,

v.

John DOE, Defendant–Appellant.

No. 97–10307.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 15, 1998.

Decided July 7, 1998.

Before: NOONAN and TROTT, Circuit Judges, and WALLACH,* International Trade Judge.

TROTT, Circuit Judge:

## OVERVIEW

John Doe (Appellant), a juvenile, challenges the district court's denial of his motion to dismiss the government's information charging him with acts of juvenile delinquency involving kidnapping and murder. His motion to dismiss was based on two claims: (1) the government's four-year delay in bringing the information against him violated his right to due process; and (2) his statutory right to a speedy trial was violated, because his conditional release to a halfway house while awaiting trial exceeded thirty days and amounted to detention under the Federal Juvenile Delinquency Act (FJDA), 18 U.S.C. §§ 5031–42, 5035–36 (1994). The district court denied the motion to dismiss on both grounds. Doe appeals the denial of his motion as well as his sentence. We affirm.

## BACKGROUND

On May 9, 1992, Appellant and three of his cousins participated in the brutal beating, kidnapping and murder of Delbert H. on a Navajo Indian Reservation in Arizona. Two young girls witnessed the beating and kidnapping. The next day, a park ranger reported that tourists had found the victim's body on an overlook on the reservation. According to tourists, a blue fanny pack was lying next to the body. Investigators never found the fanny pack.

On May 10, 1992, the FBI interviewed Appellant and his cousins, and they all admitted their involvement in the victim's death. The FBI also interviewed the young girls who had witnessed the incident and the examining physician. Appellant claims the FBI's investigation was complete and that a probable cause statement could have been written by May 13, 1992. He argues all further investigation, including the autopsy report, was complete as of November 1992.

Michael D. Gordon, Assistant Federal Public Defender, Federal Defender's Office, Phoenix, Arizona, for the defendant-appellant.

Linda C. Boone, Assistant United States Attorney, Appellate Section, Phoenix, Arizona, for the plaintiff-appellee.

* The Honorable Evan J. Wallach, United States Court of International Trade, sitting by designation.

On April 29, 1996, approximately four years after the murder, the government charged Appellant and two of his cousins with three acts of juvenile delinquency: first degree murder, felony murder, and kidnapping. Another cousin was charged only with assault. All defendants were charged pursuant to the Federal Juvenile Delinquency Act (FJDA), 18 U.S.C. §§ 5031–42 (1994). On the same day, the government filed a certification to proceed against all the juvenile defendants under 18 U.S.C. § 5032, and the district court issued a warrant for Appellant's arrest.

Appellant made his first appearance the following day. He was held in pretrial detention for three days and then released on his own recognizance pending trial. Subsequently, Appellant was arrested for violating the district court's pretrial release conditions. After eight days of pretrial detention, he was again released on his own recognizance on the condition that he reside at the House of Acceptance pending trial.

The House of Acceptance is a 46–bed, unsecured halfway house facility, which contracts with Pretrial Services. During Appellant's stay, he was not under physically restrictive custody. However, the district court's Order Setting Conditions of Release (Release Order) placed restrictions on Appellant's conduct. The Order required Appellant to: appear at all proceedings and surrender for service of sentence; restrict his travel as required by the House of Acceptance; avoid contact with the victim's family; report regularly to pretrial services; refrain from drinking alcohol; have weekly contact with a counselor; pay the House of Acceptance eighty percent of public money received and fifty percent of his income received from work; and submit to drug and alcohol testing. If Appellant were to have violated the conditions, the Attorney General could have taken him into temporary custody, a warrant could have been issued for his arrest, his release could have been revoked, the court could have issued an order of detention, or he could have been prosecuted for contempt of court.

Before trial, Appellant moved to dismiss the government's information claiming it violated (1) his due process rights because of preaccusation delay, and (2) his speedy trial rights pursuant to 18 U.S.C. § 5036. Appellant claimed he was prejudiced by the government's delay because the two witnesses changed their stories after four years. He also claimed he had lost the opportunity to look for key evidence that may have been in the blue fanny pack reported to have been lying next to the body when it was found by tourists. Appellant also argued that the time he stayed at the House of Acceptance should be counted as detention under 18 U.S.C. § 5036. He claimed that his four month stay there counted as detention, and therefore, his statutory right to a speedy trial was violated because he was brought to trial well beyond thirty days following his arrest.

The district judge found that Appellant did not establish that actual prejudice resulted from the government's delay in bringing the information and denied Appellant's motion to dismiss based on that ground. He also denied Appellant's motion based on Appellant's allegation of a FJDA speedy trial guarantee violation.

After a bench trial, the district court concluded that Appellant was a juvenile delinquent pursuant to the FJDA. The district judge spent considerable time evaluating Appellant's sentencing options. He discussed probation and detention with both counsel and a probation officer. In the end, the judge stated that "probation was not an option" considering the severity of the crime. He sentenced Appellant to four years detention and ordered him to pay restitution. The district judge honored Appellant's request and did not place him with the California Youth Authority.

Appellant appeals the district court's denial of his motion to dismiss. He also appeals the legality of his sentence.

## STANDARD OF REVIEW

We review a district court's denial of a motion to dismiss an information based on preaccusation delay for abuse of discretion. *United States v. Huntley*, 976 F.2d 1287, 1290 (9th Cir.1992). The district court's finding regarding prejudice is re-

viewed under the clear error standard. *Id.* An alleged violation of the FJDA's speedy trial right is reviewed de novo. *United States v. Eric B.,* 86 F.3d 869, 872 (9th Cir.1996). The legality of a sentence is also reviewed de novo. *United States v. Fine,* 975 F.2d 596, 599 (9th Cir.1992).

### DISCUSSION

#### A. Motion to Dismiss

##### 1. Preaccusation Delay

Appellant claims the district court erred by denying his motion to dismiss and by concluding that he did not prove that actual prejudice resulted from the government's four-year delay in bringing the information against him.

■ Generally, the statute of limitations for a particular crime limits the government's delay in bringing an information and protects the defendant from the effects of excessive delay. *Huntley,* 976 F.2d at 1290. However, delay violating a defendant's Fifth Amendment due process rights requires dismissal of the charges even if the statute of limitations has not expired. *See id.; see also United States v. Sherlock,* 962 F.2d 1349, 1353 (9th Cir.1989).

■ This circuit applies a two-prong test in order to determine if preindictment delay has violated a defendant's due process rights. *Sherlock,* 962 F.2d at 1353–54. The due process test applies to juvenile cases. *See, e.g., United States v. Doe,* 642 F.2d 1206, 1208 (9th Cir.1981).

Under the first prong of the due process analysis, a defendant must prove that he "suffered actual, non-speculative prejudice from the delay." *Sherlock,* 962 F.2d at 1353. A showing of actual prejudice is required before the second prong will be considered. *Huntley,* 976 F.2d at 1290–91. Under the second prong, a defendant "must show the delay, when balanced against the prosecution's reasons for it, offends those fundamental conceptions of justice which lie at the base of our civil and political institutions." *Sherlock,* 962 F.2d at 1353–54 (quotation and citation omitted).

■ Our first inquiry, therefore, is whether the district court clearly erred by finding that Appellant failed to establish actual prejudice. In order to establish actual prejudice, Appellant had to show definite, non-speculative proof that demonstrated "how the loss of a witness and/or evidence [was] prejudicial to his case." *Id.* at 1354 (quotation and citation omitted). This court has noted that the burden of showing actual prejudice is heavy and that it is rarely met. *See id.; see also Huntley,* 976 F.2d at 1290.

■ Appellant contends that a four-year delay in bringing the information is inherently prejudicial because of the FJDA's goals of prompt prosecution and resolution of cases. This court has already addressed that contention in *United States v. Doe,* 642 F.2d at 1208. In *Doe,* we held: "[M]ere passage of time per se does not give rise to a per se constitutional violation." *Id.* Thus, despite the FJDA's goals, Appellant was required to demonstrate actual prejudice beyond mere passage of time.

Appellant argues that the government's delay prejudiced his case by denying him the opportunity contemporaneously to memorialize the perceptions of the two young girls who witnessed the incident. He claims this lost opportunity is the equivalent of lost evidence because both witnesses changed their stories. At trial, they testified about a knife that neither of them had mentioned in FBI interviews conducted four years earlier.

This court normally considers lost testimony to have been adequately protected when the government brings charges within the applicable statutes of limitation. *See Sherlock,* 962 F.2d at 1354. In this case, the government brought the information within the applicable statutes of limitation for murder and kidnapping. *See* 18 U.S.C. §§ 1111, 1201, 1153, 3281. Therefore, Appellant's claim based on loss of testimony fails unless he established that the "lost testimony actually impaired meaningfully [his] ability to defend himself." *United States v. Moran,* 759 F.2d 777, 782 (9th Cir.1985)(quoting *United States v. Pallan,* 571 F.2d 497, 500–01 (9th Cir.1978)).

The new testimony regarding a knife did not "actually impair[ ] meaningfully" Appellant's ability to defend himself. *Id.* He was able to rebut the accounts of the knife on cross-examination. One witness admitted that she had changed her story. She testified that she had only assumed there was a knife because Appellant made stabbing motions toward the victim. The other witness admitted on cross-examination that she had witnessed stabbing motions but had not seen a knife. Even the government's medical witness testified on cross-examination that he neither observed nor read about stab wounds during his review of the photos and the autopsy report. We conclude that Appellant did not meet his "heavy burden" of establishing prejudice based on loss of testimony because he was able to rebut the stories of the knife on cross-examination. *See United States v. Bracy,* 67 F.3d 1421, 1427 (9th Cir.1995) (holding that claims of prejudice based on failed or post-event witness memories lack merit where a defendant can effectively cross-examine the witnesses about the events).

Appellant next argues that he was prejudiced by preindictment delay because he lost the opportunity to look for key evidence. He contends that the four-year delay prevented him from finding the blue pack reported to have been lying next to the body, which might have contained exculpatory evidence. This evidence is especially crucial for his defense, he contends, because his memory was impaired from heavy drinking on the night of the murder.

■ Speculation regarding whether Appellant could have found the blue pack and whether it would have contained exculpatory evidence fails to establish actual prejudice. An allegation of prejudice must be supported by non-speculative proof. *See Sherlock,* 962 F.2d at 1353–54. Further, Appellant's claim of lost memory caused by intoxication does not independently establish actual prejudice. *Id.* at 1354.

Although we do not condone the government's four-year delay in bringing the information, which the government forthrightly admits was without excuse, we conclude that the district court did not clearly err by finding that Appellant failed to establish actual prejudice. Therefore, we need not address the second prong of the due process test. *Huntley,* 976 F.2d at 1290. We conclude that the district court did not abuse its discretion by denying Appellant's motion to dismiss based on preaccusation delay.

## 2. Juvenile Speedy Trial Protection

■ Appellant argues that the district court erred by refusing to dismiss the information. He contends that, after all permissible delay, the bench trial took place 251 days after his first appearance. This excessive delay, he argues, violates the speedy trial provision of the FJDA. *See* 18 U.S.C. § 5036 (affording juveniles a speedy trial right and listing the types of delay that toll the speedy trial clock).

The speedy trial provision of the FJDA provides in relevant part:

> If an alleged delinquent who is in detention pending trial is not brought to trial within thirty days from the date upon which such detention was begun, the information shall be dismissed on motion of the alleged delinquent. . . .

*Id.* The express language of § 5036 requires the defendant to be *in detention* for thirty days in order to trigger the speedy trial provision. *Id.*

The government argues that eleven days of detention coupled with a subsequent conditional release to a halfway house while awaiting trial does not trigger the protection of 18 U.S.C. § 5036. Appellant contends that his stay at the House of Acceptance should be counted as days in detention. He argues that the House of Acceptance is exactly the kind of detention facility contemplated by 18 U.S.C. § 5035, which states in relevant part:

> A juvenile alleged to be delinquent may be detained only in a juvenile facility or such other suitable place as the Attorney General may designate. Whenever possible detention shall be in a *foster home or community based facility* located in or near his home community. . . .

*Id.* (emphasis added).

The Ninth Circuit has not addressed the issue presented: whether restrictive bail con-

ditions constitute "detention" under 18 U.S.C. § 5036.[1] Other circuits have considered the issue, however.

■ In a similar case to the one at issue, the Fifth Circuit considered the matter and concluded that 18 U.S.C § 5036 "does not clearly impose a 30–day trial requirement in restrictive bail situations." *United States v. Cuomo*, 525 F.2d 1285, 1291 (5th Cir.1976). In *Cuomo*, a juvenile defendant was arrested and held for six days in jail. *Id.* at 1286. He was released to his parents on restrictive bail conditions but was later arrested for violating the conditions. *Id.* at 1287. The defendant was held for another six days and released again on restrictive bail. *Id.* The court held that a juvenile must be detained in "physically restrictive detention amounting to institutionalization" before the protection of § 5036 applies. *Id.* at 1292. Thus, the Fifth Circuit tolled the speedy trial clock under § 5036 during the period when the defendant was released on restrictive bail. *Id.*

A similar construction of "detention" was advanced by the Seventh Circuit in *United States v. Sechrist*, 640 F.2d 81, 84–5 (7th Cir.1981). In *Sechrist*, the court also interpreted § 5036 to require physical custody as an element of detention. *Id.* The court held that lodging a detainer did not amount to detention because the juvenile defendant was already in detention on another charge. *Id.* The court reasoned that the detainer merely requested notification of the defendant's release date and did not amount to physical custody. *Id.*

We agree with the Fifth and Seventh Circuits, and specifically adopt the test set forth by the Fifth Circuit in *Cuomo*. A juvenile defendant must be detained in "physically restrictive detention amounting to institutionalization" before the speedy trial protection of 18 U.S.C. § 5036 applies. *Cuomo*, at 1292. Section 5036 does not impose a "30–day trial requirement in restrictive bail situations." *Id.* at 1291.

In the instant case, the conditions of Appellant's release did not amount to "physical-ly restrictive detention amounting to institutionalization." *Id.* at 1292. Appellant was in detention for eleven days and was released on restrictive bail during his four month stay at the House of Acceptance. The fact that Appellant could have been placed in detention for violating the Release Order conditions is persuasive evidence that his bail conditions did not amount to detention. Therefore, we conclude that the district court did not err by denying Appellant's motion to dismiss based on an alleged violation of 18 U.S.C. § 5036.

## B. Sentence

■ Appellant contends that the district judge applied the wrong legal standard and ignored the primary goal of rehabilitation when he imposed detention rather than probation. He argues the district judge did not recognize his discretion to impose probation. Appellant supports his argument with the district court's statement: "[B]ecause of the viciousness of that crime, probation is simply not an option."

Once a juvenile defendant is adjudged a juvenile delinquent, the district court has four sentencing options under 18 U.S.C. § 5037(a). It may suspend a finding of delinquency, sentence an adjudged delinquent to official detention or to probation, or order restitution. *See id.* If detention is ordered, 18 U.S.C. § 5037(c) limits the sentence imposed. Section 5037(c)(2)(A) allows the district court to sentence a defendant in Appellant's position to up to five years detention. An adult in the same position could be sentenced to life in prison.

In this case, the district judge sentenced Appellant to four years detention, a sentence well within the range allowed by 18 U.S.C. § 5037(c)(2)(A). We will not set aside the sentence unless the district court based its sentencing decision on the erroneous "legal conclusion that it was not permitted to impose [probation]." *United States v. Roth*, 32 F.3d 437, 438 (9th Cir.1994).

---

**1.** This circuit has addressed § 5036 violations where the juvenile remained in jail for over thirty days pending trial. *See, e.g., United States v. Andy*, 549 F.2d 1281, 1283 (9th Cir.1977); *United States v. Gonzalez–Gonzalez*, 522 F.2d 1040, 1041–43 (9th Cir.1975).

An explicit statement is not necessary for this court to conclude that a district court recognized its discretion. *See United States v. Eaton,* 31 F.3d 789, 793 (9th Cir. 1994). The district judge's conduct at the sentencing hearing indicates that he was aware that probation was an option. He spent considerable time evaluating Appellant's sentencing options, including rehabilitation. The judge discussed options with both counsel and with Appellant's mother. He asked the government if probation was an option, and the government conceded that it was. The district judge also called a recess during the sentencing hearing in order to discuss sentencing options with the probation officer.

The district judge's remarks and conduct in the sentencing hearing are sufficient evidence that the judge considered and rejected probation as an adequate sentence in this case. *See id.* Therefore, we affirm the sentence imposed by the district judge.

## CONCLUSION

We affirm the district court's denial of Appellant's motion to dismiss and conclude that Appellant's sentence was legally imposed.

AFFIRMED.